Bradbury, J.
The plaintiff, now plaintiff in error, sets forth his claim in the court of common pleas in an amended petition as follows: “The plaintiff now comes and by leave of the court, first had and obtained, and files this his amended petition in this case, and says : ‘That on the 18th day of August, A. D. 1886, the plaintiff was intoxicated to such an extent, that by reason thereof he was totally unable and unfit to make or enter into a valid contract of any kind. That the defendant, *62 then well knowing the condition of the plaintiff, and that he was then intoxicated to such an extent that he was wholly unfit and unable by reason thereof to make or enter into a valid or binding contract, and then intending to cheat and defraud the plaintiff, bargained with, and then induced and procured the plaintiff, while so intoxicated, to sell and deliver to him, the defendant, the undivided one-half interest in all the livery stock, consisting of horses, carriages, harness, whips, robes and all other property then owned by the plaintiff and one Jerome T. Baird as partners under the firm name of Baird & Son. That said undivided one-half interest in said livery stock, so sold and delivered by the plaintiff to the defendant, was then of the value of $1,600; yet the defendant, then well knowing that the said undivided one-half interest in said livery stock was of the value of $1,600, and then intending to cheat and defraud the plaintiff, induced and procured the plaintiff, while so intoxicated as aforesaid, to sell and deliver said undivided one-half interest in said livery stock to the defendant for the sum of $1,000 and no more; and while so intoxicated and intending to cheat and defraud the plaintiff, the defendant caused and procured the plaintiff to enter into a written contract between him and the plaintiff wherein and whereby it appears that the plaintiff sold and delivered said one undivided half interest in said livery stock to the defendant for the sum of $1,000 and no more. The plaintiff says that if he had been sober and capable of transacting such business on said 18th day of August,. 1886, he would not have entered into said written contract with the defendant, and would not have sold and delivered his said undivided one-half interest in said livery stock to the defendant for less than *63 $1,600 cash. That his said undivided one-half interest in said livery stock was then worth the sum of $1,600 cash, and that the sum of $1,000, the amount paid by the defendant to the plaintiff therefor at the time and in the manner aforesaid, was a grossly inadequate price and consideration therefor and the defendant then well knew it. That the defendant then well knew that $1,000 was a grossly inadequate price and consideration for the said undivided one-half of said livery stock, and then knew that if the plaintiff was sober and capable of transacting such business as that of selling and disposing of his interest in said livery stock, that the plaintiff would not then have accepted the sum of $1,000 as a full consideration for his interest in said livery stock, which he had sold and delivered to defendant as aforesaid, but intending to cheat and.defraud the plaintiff, the defendant purchased from the plaintiff, the said interest in said livery stock for the sum of $1,000 as in the manner aforesaid, and which stock the plaintiff then delivered to defendant. The plaintiff says that by reason of the premises he has been cheated, wronged and defrauded by the defendant out of the sum of $600.
‘ ‘ ‘ The plaintiff therefore prays judgment against the defendant for the sum of six hundred dollars with interest from August 18, 1886. ’ ”
To this petition a demurrer was interposed by the defendant, which the court of. common pleas overruled, and to which ruling the defendant excepted. An issue of fact was then joined between the parties, upon the trial of which the .plaintiff offered to prove the price that he had placed upon the livery stock before the sale, while sober. The defendant objected to its admission; his objection being overruled and the evidence admitted, he *64 entered an exception thereto. It was upon these two grounds that the circuit court - reversed the judgment; that court holding that the amended petition, as above set forth, did not disclose a cause of action, and that evidence of the value the plaintiff had, while sober, placed upon the property just previous to the sale, was not admissible.
’ 1. In support of the holding of the circuit court that the amended petition did not state a cause of action, counsel contends that plaintiff’s only remedy was to rescind the contract, which he could accomplish in either of two ways: 1, by a suit in equity; 2, by an offer to return the consideration he had received, coupled with a demand for the restoration of his own property, after which, if the defendant did not consent to a restoration, an action in replevin, or in trover, would lie. That these remedies were open to the plaintiff is apparent, and is in fact admitted by his counsel; but he contends for still another, namely the right, without a prior formal recision of the contract, to maintain an action to recover the difference between the value of the property and the price received. Such an action could not be regarded as being on the contract; for instituting an action directly on the contract, would be an affirmation of it, and if the -contract should be affirmed he could not recover; for, according to its terms, he had been fully paid. The institution of such an action might be regarded, perhaps, as a recision; but if the defendant’s possession was rightful, up to the moment of the filing of the petition, the principle upon which -that possession would be instantly transformed into a wrongful one, is not very apparent. If its unlawful character grew out of the recision, the defendant should have been afforded *65 an opportunity to restore the property before being held a wrongdoer. If, however, the method by which the defendant obtained possession was wrongful, there would be consistency in holding the possession thus obtained to have been wrongful at its inception.
The petition avers that the defendant, with intent to cheat and defraud the plaintiff, induced the latter to enter into the contract under consideration, and to deliver to the defendant the property involved in the controversy, with knowledge that the plaintiff was ‘ ‘unfit and unable to make or enter into a valid contract,” because his senses were dulled by intoxication. The demurrer admitted this to be true. It thus appeared not merely that a contract had been made, but that the defendant had secured the possession of the plaintiff’s property by knowingly taking advantage of the latter’s temporary incapacity. Had possession been taken while the plaintiff’s senses were overcome by sleep, no one Would deny that such a possession was wrongful. The difference between the character of a possession secured by the latter method, and one deliberately obtained through the medium of an invalid contract, made with one whose senses the possessor knew at the time were stupefied by excessive intoxication, is one of degree rather than principle. That in the former case the transaction would involve a trespass, and present none of the features péculiar to contracts, while in the latter case it took the form of a contract, is a distinction possessing little if any materiality in this connection. The fraud inhering in the one, should be deemed a substantial equivalent to the force involved in the other, method of obtaining possession. Each is wrongful. To secure the possession of prop *66 erty by means of a contract made with its owner, by one, who at the time knew him to be incapable of entering into a contract, constitutes a fraud.
In such case, it is true, a contract exists which the incapacitated party has an option to affirm or rescind. But because the one party may exercise this option, it does not follow that the other party may compel its exercise as a condition precedent to obtaining any relief. If, when restored to capacity, the former is satisfied with the contract, and wished to enforce its provisions, he can affirm and maintain an action upon it; if he had, in fact, received a substantial part of the consideration secured to him by the contract, and wished to recover possession of the property with which he had been induced to part, he should be required to rescind the contract and restore that part of the consideration which had been paid him, for he should not be allowed to retain the latter and at the same time recover possession of the former.
Where one person, ignorant of the incapacity of another person deals with the latter and obtains possession of his property, the possession of the former should not be deemed wrongful until the contract is rescinded and a demand for the property made upon him. The mutual rights or liabilities of persons thus situated, however, should not be the measure of the rights and liabilities of parties, where the possession of the property of one has been wrongfully obtained by the other. The wrongful acts by which possession was secured become material factors in determining the question. If a possession thus obtained is continued under circumstances from which it may be fairly inferred that the party in possession is exercising* *67 dominion over the property to the exclusion of the right of the party wrongfully dispossessed, the latter may regard such acts as constituting a conversion of the property.»
We have found no case in all respects similar to the one under consideration, but in a number of well considered cases, courts have held that where the purchase of goods has been effected by false representations, the vendor may maintain trover against the vendee without demand. Thurston et al. v. Blanchard, 22 Pick. 18; Green v. Russell, 5 Hill, 183; Thompson v. Roe, 16 Conn., (Day) 71; Noble v. Adams, 7 Taun, 59; Bristol v. Wilsmore, 2 D. & R., 755.
In the procedure prescribed by our civil code all the ancient common law actions are abolished; all are merged into one “civil action,’’and even if the facts stated in the petition did not disclose a technical conversion they constitute fraud to the injury of the plaintiff, as we have seen. The remedy should be as broad as the injury. The party guilty of the fraud should not be allowed to shield himself by a contract procured in this way and insist upon immunity for the fraud until the contract has been formally rescinded.
2. The principal dispute between the parties at the trial in the court of common pleas related to the competency of the plaintiff to make a contract at the time the one in contention was'entered into. One means of ascertaining this, was to contrast him, as he conducted and expressed himself on that day, with himself as, according to his conduct, his opinions and expressions, he appeared on other days when known to be duly sober. That a few days before the sale, at a time when he was sober, he had placed upon the property a value that widely varied from that at which it was sold, *68 reflected upon the extent that his judgment had been affected by the liquor he had drank.
That such evidence might be considered by the jury for some other and improper purpose, as, for instance, in determining the value of the property and the damages, does not render its admission erroneous. If competent for any purpose it was admissible.
Whenever it becomes necessary to inquire into the mental condition of a person, and there are other issues in the cause, much evidence is usually admitted which, but for that issue, would be incompetent; and in such cases the court, upon the request of a party, should caution the jury to limit its effect to the issue to which it is lawfully applicable.
The charge of the court is not printed in the record; but we should presume that the trial court did its duty, and therefore either limited to its proper office the evidence objected to, or if requested by the defendant, would have done so.

Judgment of the circuit court reversed and that of the common pleas affirmed.